UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                        Plaintiff,

                                                        Case # 15-CR-122-FPG
v.

                                                        DECISION AND ORDER

LUIS MONTANEZ,

                                        Defendant.

## INTRODUCTION

On April 15, 2020, Defendant Luis Montanez filed a Motion for Reduction in Sentence. ECF No. 176. Defendant requests that the Court reduce his sentence to either time served or alter his sentence to home confinement because of the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic. ECF Nos. 176, 179, 180. The Government opposes the Motion. ECF No. 178. For the reasons that follow, Defendant's Motion is DENIED without prejudice.

## BACKGROUND

On October 2, 2017, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute, and distribution of, 100 grams or more of heroin pursuant to 21 U.S.C. § 846, a charge that carries a mandatory minimum term of imprisonment of five years and a maximum term of forty years. ECF Nos. 1, 105, 106, 108; 21 U.S.C. § 841(b)(1)(B). Defendant was sentenced on August 16, 2018 to 151 months in the Federal Bureau of Prisons ("BOP") and four years' supervised release. ECF Nos. 138, 139.

Defendant is currently incarcerated in the Elkton Federal Correctional Institute ("FCI Elkton"). ECF No. 176 at 3. FCI Elkton has been particularly hard hit by COVID-19. Ninety-nine inmates and forty-nine staff members have contracted the virus. *COVID-19 Coronavirus*, FEDERAL

1

BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited May 5, 2020). Seven inmates have died. *Id.* The Attorney General has specifically identified FCI Elkton as a facility facing "significant levels of infection" and has directed the BOP to increase the use of home confinement for prisoners housed at FCI Elkton and other similarly situated facilities. ECF No. 178-1 at Ex. B.

Defendant appears to suffer from asthma, hypertension, carpal tunnel syndrome, anxiety, and depression. ECF No. 176 at 2; ECF No. 128 ¶¶ 96–100. He is currently forty-one years old and has been described as "moderately obese." ECF No. 176 at 2; ECF No. 128 at 2 & ¶ 97. Defendant argues that the Centers for Disease Control and Prevention ("CDC") and the World Health Organization ("WHO") have stated that certain preexisting conditions can increase the risk posed by COVID-19, including asthma and hypertension. ECF No. 176 at 3. Defendant claims that he "is locked in a small area with people coughing and suffering from fevers" and that he has experienced high blood pressure and aggravated asthma symptoms. *Id.* at 4.

Defendant claims that he attempted to apply for compassionate release by requesting the relevant forms from his counselor on April 1, 2020. *Id.* He claims, however, that his counselor told him requesting release would be a waste of "time because the warden did not believe in compassionate release and would not be granting any such requests." *Id.* Although the Government claims that it has no record of any request under the relevant statute (18 U.S.C. § 3582(c)), ECF No. 178 at 6, Defendant's counsel represented that, on April 13, 2020, he mailed a letter to the warden of FCI Elkton requesting that Defendant "be considered for compassionate release," ECF No. 176 at 23.

## LEGAL STANDARD

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-CR-743, 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15,

2020). Due to its amendment by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)") provides criminal defendants the opportunity to move courts to reduce previously imposed terms of imprisonment. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). Prior to the amendment, only the BOP could bring such a motion. *Id.*; 18 U.S.C. § 3582(c)(1)(A). Although the BOP remains free to bring such a motion at will, Defendants may only bring motions under Section 3582(c)(1)(A) if they either (1) have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" (the "exhaustion requirement") or (2) thirty days have elapsed since the warden of the defendant's facility received such a request (the "thirty-day backstop;" the Court refers to the exhaustion requirement and the thirty-day backstop collectively as "prerequisites").[1] 18 U.S.C. § 3582(c)(1)(A).

If a defendant meets these prerequisites (or the BOP has brought the motion), the Court may grant relief if it finds that (1) "extraordinary and compelling reasons warrant [the] reduction" and (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* If these elements are satisfied, the Court is to consider the factors set forth in Section 3553(a), which describes the factors courts are to consider in imposing sentences. *Id.* §§ 3553(a), 3582(c)(1)(A). In analyzing these elements and factors, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, No. 13-CR-115, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019). If the Court grants such a motion, it may reduce the term of imprisonment and may correspondingly impose a term of probation or supervised release, with or without conditions, provided that such a term does not exceed the unserved portion of the original term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).

---

[1] Defendant has not claimed he is entitled to relief under Section 3582(c)(1)(B) or (c)(2), which do not contain an exhaustion requirement. 18 U.S.C. § 3582(c).

**DISCUSSION**

**I.        Section 3582(c)(1)(A)'s Prerequisites**

Defendant does not argue that he has satisfied Section 3582(c)(1)(A)'s exhaustion requirement or that he may take advantage of the thirty-day backstop.[2] Instead, Defendant argues that the Court can and should waive compliance with these prerequisites based on equitable considerations. ECF No. 176 at 19–24. Defendant specifically argues that waiver is appropriate because he is facing irreparable harm, because exhaustion would be futile, and because equitable estoppel excuses compliance. The Court must first examine whether there are *any* exceptions to Section 3582(c)(1)(A)'s prerequisites.

Given the ongoing pandemic and the understandable desire of inmates to avoid exposure to COVID-19 while incarcerated, there has been a cavalcade of similar motions filed by defendants across the country. Correspondingly, over the last month, numerous courts have weighed in on whether and when the statutory prerequisites may be waived. There is a growing split amongst district judges in the Second Circuit regarding this question. *See United States v. Bin Wen*, No. 17-CR-6173, 2020 WL 1845104, at *4 (W.D.N.Y. Apr. 13, 2020) (collecting cases).

Courts waiving the prerequisites generally rely on one of three theories: (1) that exhaustion requirements are typically subject to non-statutory exceptions, *e.g.*, *United States v. Perez*, No. 17-CR-513, 2020 WL 1546422, at *2–3 (S.D.N.Y. Apr. 1, 2020); (2) that Congress intended to grant courts the right to accelerate judicial review, *e.g.*, *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988, at *3–4 (S.D.N.Y. Apr. 13, 2020); and (3) that the thirty-day backstop is analogous to timeliness claim-processing rules, which are generally subject to equitable estoppel, *e.g.*, *United States v. Russo*, No. 16-CR-441, 2020 WL 1862294, at *5–6 (S.D.N.Y. Apr. 14, 2020). This Court

---

[2] Because Defendant has not argued that he has exhausted his administrative remedies or satisfied the thirty-day backstop, the Court need not examine the specific contours of these requirements.

does not find any of these approaches persuasive. Section 3582(c)(1)(A)'s language is clear: the only exception to the exhaustion requirement is the thirty-day backstop.

A.  *Although the Exhaustion Requirement is Nonjurisdictional, it is Statutory and not Subject to Judge-Made Exceptions*

The first question that the Court must answer is whether Section 3582(c)(1)(A)'s prerequisites are jurisdictional. The Supreme Court has explained that "truly jurisdictional rules . . . govern a court's adjudicatory authority[] and nonjurisdictional claim-processing rules[] . . . do not." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Accordingly, if the prerequisites are jurisdictional, the Court has no authority to hear Defendant's motion. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]his Court has no authority to create equitable exceptions to jurisdictional requirements.")

"A rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional. But if Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." *Gonzalez*, 565 U.S. at 141–42 (alterations, citations, and internal quotation marks omitted). Mandatory language alone is insufficient to convert a claim-processing rule into a jurisdictional mandate. *Id.* at 146; *see also United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) ("[W]e have made plain that most [statutory] time bars are nonjurisdictional."). "[T]raditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Kwai Fun Wong*, 575 U.S. at 410.

Although Section 3582(c)(1)(A)'s prerequisites are clearly mandatory, there is no language suggesting that the prerequisites were intended to function as jurisdictional mandates. Section 3582(c) does not refer to a court's capacity to hear claims, *cf. Gonzalez*, 565 U.S. at 142 (finding that statute was jurisdictional where it mandated that, "[u]nless a circuit justice or judge issues a

certificate of appealability, an appeal may not be taken to the court of appeals"), but instead it refers to what parties may bring a sentence reduction motion. 18 U.S.C. § 3582(c)(1)(A). Further, "the language of Section 3582(c) makes no mention of jurisdictional elements and the section is not part of the jurisdictional portion of the United States Code." *Russo*, 2020 WL 1862294, at *4. The Second Circuit has also found that Section 3582(c)(2) is not jurisdictional. *United States v. Johnson*, 732 F.3d 109, n.11 (2d Cir. 2013) ("Because [the defendant]'s motion presented a nonfrivolous claim requiring interpretation of section 3582(c)(2) and the Commission's Guidelines and policy statements, it arose under federal law, and subject matter jurisdiction was conferred by 28 U.S.C. § 1331." (citation omitted)).

Accordingly, Section 3582(c)(1)(A)'s exhaustion requirement and the thirty-day backstop are nonjurisdictional, and it appears the Government may waive compliance with these requirements. *See United States v. Park*, No. 16-CR-473, 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020). Permitting such waivers is consistent with the statute itself, which allows the BOP to bring such a motion on Defendant's behalf without regard for the prerequisites. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Vence-Small*, No. 18-CR-31, 2020 WL 1921590, at *6 (D. Conn. Apr. 20, 2020) ("Although section 3582 does not expressly provide for a power of the Government to waive the exhaustion requirement, I would understand a statement by the Government that it waives exhaustion to be the equivalent of a motion by the Director of the BOP for sentence reduction just as section 3582(c)(1)(A) expressly allows."). The Government in this case, however, has not done so. ECF No. 178. Accordingly, this matter turns on whether Section 3582(c)(1)(A)'s prerequisites may be waived by a court.

"[C]alling a rule nonjurisdictional does not mean that it is not mandatory." *Gonzalez*, 565 U.S. at 146. The Supreme Court regularly emphasizes that courts "lack the authority to rewrite"

statutes. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding . . . ." (internal quotation marks omitted)). Accordingly, this Court does not have the authority to rewrite Section 3582(c)(1)(A)'s prerequisites.

The Supreme Court's analysis of the Prison Litigation Reform Act ("PLRA") in *Ross v. Blake* is instructive. 136 S. Ct. 1850 (2016). The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court looked to the text of the statute and explained that the PLRA's exhaustion requirement was mandatory and subject to only "one significant qualifier: the remedies must indeed be 'available' to the prisoner." 136 S. Ct. at 1856; *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (explaining that the "text of the statute" demonstrates that an administrative remedy must actually be "available" to an inmate before exhaustion is required). The Supreme Court accordingly explained that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to [the PLRA]'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1856.

Here, Defendant has cited no basis for the Court to "engraft" a general equitable exception into either the exhaustion requirement or the thirty-day backstop. *See Stokes v. Riskus*, No. 14-CA-60, 2017 WL 2592404, at *9 (W.D. Pa. June 15, 2017) ("Plaintiff's appeal to equitable considerations must be rejected out of hand[] . . . [because the PLRA] is framed in mandatory terms . . . ."). Section 3582(c)(1)(A)'s exhaustion requirement is distinct from the PLRA's

exhaustion requirement in two important respects. First, Section 3582(c)(1)(A) does not include the "available" qualifier found in the PLRA, and second, Section 3582(c)(1)(A) contains the thirty-day backstop, which finds no analog in the PLRA. *Compare* 42 U.S.C. § 1997e(a), *with* 18 U.S.C. § 3582(c)(1)(A). This legislative tradeoff ensures that defendants will be able to present their motions to a court within thirty days and eliminates the need for inquiry into the availability of administrative remedies. *See United States v. Underwood*, No. 18-CR-201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) ("Unlike the PLRA, the compassionate release exhaustion requirement does not even limit its reach to exhaustion of 'available' administrative remedies, such that it is not clear that even the types of exceptions found in *Ross* to be available under the PLRA would apply here."); *see also Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *8 n.3 (5th Cir. Apr. 22, 2020) (Higginson, J., concurring) (noting that, compared to Section 3582(c)(1)(A)'s prerequisites, the PLRA's availability language "arguably presents a stronger basis from which to conclude that" the ongoing pandemic permits waiver of the PLRA's exhaustion requirement).[3]

Other statutes requiring exhaustion of administrative remedies contain textual exceptions. For instance, some statutes expressly excuse litigants' failure to exhaust administrative remedies if they have "reasonable grounds" for their failure. *Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1256 (10th Cir. 2019) (citing 15 U.S.C. §§ 78y(c)(1), 80b-13(a)). Section 3582(c)(1)(A)'s only exception, however, is the thirty-day backstop. *United States v. Roberts*, No. 18-CR-528, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) ("[Section 3582(c)(1)(A)] includes a limited futility-like exception, as it allows an inmate to seek relief 'after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.'" (quoting 18 U.S.C.

---

[3] Even if "availability" of administrative remedies was a valid inquiry under Section 3582(c)(1)(A), the exigency created by the COVID-19 crisis may be insufficient to excuse compliance with administrative remedies. *See Valentine*, 2020 WL 1934431, at *6–7 (noting that "special circumstances of the COVID-19 crisis" were insufficient to excuse compliance with PLRA's exhaustion requirement).

§ 3582(c)(1)(A)); *see also United States v. Wright*, No. 17-CR-695, 2020 WL 1922371, at \*2 (S.D.N.Y. Apr. 20, 2020) ("[T]he text of Section 3582 contains no exigency exception . . . , and indeed the text affirmatively refutes the availability of such an exception . . . .").

Defendant cites *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), for the proposition that courts may waive exhaustion requirements, but *Hemphill*'s analysis related to the PLRA and was abrogated in relevant part by the Supreme Court's decision in *Ross*.[4] 136 S. Ct. at 1856; *see also Priatno*, 829 F.3d at 123 (discussing abrogation of *Hemphill*).

Defendant also cites multiple cases that discuss judge-made administrative exhaustion requirements. ECF No. 176 at 19–21; *e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107–09 (2000) ("Here, the Commissioner does not contend that any statute requires issue exhaustion in the request for review."); *McKart v. United States*, 395 U.S. 185, 193–97 (1969); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.").[5]

---

[4] Defendant cites language from Justice Breyer's concurrence in *Ross* suggesting that Congress intended the term "exhausted" to encompass "well-established exceptions to exhaustion." 136 S. Ct. at 1863 (Breyer, J., concurring) (quoting *Woodford v. Ngo*, 548 U.S. 81, 103 (2006) (Breyer, J., concurring)). But, this proposition does not appear to have ever been adopted by the Supreme Court with respect to statutory exhaustion requirements. This Court is not at liberty to adopt the reasoning of Justice Breyer's concurrence to the extent it conflicts with the binding opinion of the majority. *See United States v. Izzo*, 144 F. App'x 906, 908 (2d Cir. 2005) (summary order) ("That Justice Thomas, in a concurrence in *Shepard*, reiterated his opposition to *Almendarez-Torres*'s holding does not change the fact that *Almendarez-Torres* remains binding precedent." (citing *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997) (observing that a statement in a concurrence does not "constitute[] binding precedent"))).

[5] Defendant also cites *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12–13 (2000). In that case, the Supreme Court does note certain exceptions to judge-made exhaustion requirements, but the Court held that the statutory scheme in question prevented application of the exhaustion exceptions. The Supreme Court explained that "insofar [as the statute] demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case." *Id.* at 13. The Supreme Court further acknowledged the tradeoff of "occasional individual, delay-related hardship" but "such was the judgment of Congress." *Id.* Accordingly,

Some courts in this Circuit have relied on *Washington v. Barr* for the proposition that, "[e]ven where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *United States v. Zukerman*, No. 16-CR-194, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (quoting *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)). Other judges have aptly explained that, in *Washington*, the Second Circuit was examining a judge-made exhaustion requirement, not a statutory exhaustion requirement. 925 F.3d at 116–18; *e.g.*, *United States v. Cassidy*, No. 17-CR-116, 2020 WL 1969303, at *7 (W.D.N.Y. Apr. 24, 2020); *Wright*, 2020 WL 1922371, at *2; *see Washington*, 925 F.3d at 118 (noting that exhaustion was "not mandated by Congress").[6] Further, the Second Circuit cited a Supreme Court case addressing a judge-made exhaustion requirement for the proposition in question. *Washington*, 925 F.3d at 118 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). Accordingly, the Second Circuit's statement regarding statutory exhaustion requirements was dicta and is inconsistent with the Supreme Court's holding in *Ross*, which provided that "judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions" but "a statutory exhaustion provision stands on a different footing"— "courts have a role in creating exceptions only if Congress wants them to." *Ross*, 136 S. Ct. at 1857.

In short, the Court finds no textual basis for deviating from Section 3582(c)(1)(A)'s express statutory exhaustion requirement.

---

*Shalala* supports the position that statutory requirements are not generally subject to judge-made remedies even when enforcement of those statutory schemes has negative consequences in individual cases.

[6] Other courts have cited the Second Circuit's decision in *Paese v. Hartford Life & Accident Ins.*, 449 F.3d 435 (2d Cir. 2006), for the broad proposition that "'claim-processing rule[s]' are 'subject to equitable considerations such as waiver, estoppel or futility.'" *United States v. Scparta*, No. 18-CR-578, 2020 WL 1910481, at *5 (S.D.N.Y. Apr. 20, 2020) (alterations in original) (quoting *Paese*, 449 F.3d at 443). But, like *Washington*, *Paese* related to a law (the Employee Retirement Income Security Act) that "does not even contain a statutory exhaustion requirement." *Paese*, 449 F.3d at 445.

B.     *Section 3582(c)(1)(A)'s Unambiguous Terms Preclude a Finding of Contrary Legislative Intent*

Some courts attempt to justify departing from the language of Section 3582(c)(1)(A)'s prerequisites by claiming the thirty-day backstop was intended "'as an accelerant to judicial review,' as 'at the time the First Step Act passed, a 30-day period before which to seek judicial review would have seemed exceptionally quick.'" *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020) (quoting *Russo*, 2020 WL 1862294, at *5); *see also United States v. Sanchez*, No. 18-CR-140, 2020 WL 1933815, at *4–5 (D. Conn. Apr. 22, 2020) ("[T]he Court finds it has the discretion to waive the 30-day waiting period where strict enforcement would not serve the Congressional objective of allowing meaningful and prompt judicial review."). While it is true that the thirty-day backstop was clearly meant as an accelerant to judicial review, it is unclear how the thirty-day backstop could possibly signal congressional intent to *further* accelerate judicial review under Section 3582(c)(1)(A). *United States v. Vence-Small*, No. 18-CR-31, 2020 WL 1921590, at *5 (D. Conn. Apr. 20, 2020) ("It would be anomalous to conclude that, if Congress decides to soften a plenary exhaustion requirement by allowing for an equitable exception (*e.g.*, a 30-day waiting time rule), then this opens the door for courts to create their own exception-to-the-exception (*e.g.*, a less-than-30-day waiting time rule)."); *see also Wright*, 2020 WL 1922371, at *2 ("This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request."). [7]

---

[7] Similarly, at least one Court has cited the title of the relevant First Step Act provision: "Increasing the Use and Transparency of Compassionate Release." *Scparta*, 2020 WL 1910481, at *7 (quoting Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018)). There can be no doubt that Congress intended to increase the use of compassionate release in modifying Section 3582(c)(1)(A), but Congress accomplished exactly that by permitting defendants the opportunity to bring such motions and by including the thirty-day backstop. It cannot be said that the section title supports the premise that Congress intended to allow courts to disregard both the exhaustion requirement and the thirty-day backstop set forth in Section 3582(c)(1)(A).

Congress struck a balance by including the thirty-day backstop in Section 3582(c)(1)(A) between administrative exhaustion and expediency of judicial review. That balance tips further towards expediency in Section 3582(c)(1)(A) than many other statutes with exhaustion requirements. It cannot be said, however, that in striking such a balance, Congress intended to allow courts to place their thumbs on the scale further in favor of expediency. To the contrary, Section 3582(c)(1)(A)'s text is clear: the thirty-day backstop is the sole exception to the exhaustion requirement. "Congress may of course amend the law at any time. In the meantime, the Court is constrained to apply the law as enacted by Congress." *Barton v. Barr*, No. 18-725, 2020 WL 1941965, at *10 (U.S. Apr. 23, 2020).[8]

Several courts have discussed the legislative history of the First Step Act and concluded that Congress intended to "enhance public safety" and "make . . . changes to [BOP's] policies and procedures to ensure prisoner and guard safety and security." *United States v. Coles*, No. 00-CR-20051, 2020 WL 1976296, at *5 (C.D. Ill. Apr. 24, 2020) (quoting H.R. Rep. No. 115-699, at 22 (2018)). "[Legislative history] need not be consulted when, as here, the statutory text is unambiguous." *United States v. Woods*, 571 U.S. 31, 46 n.5 (2013).

Even assuming it were acceptable for the Court to dive into the First Step Act's legislative history, it is not clear to the Court that it supports waiver of Section 3582(c)(1)(A)'s prerequisites. The general pronouncements noted above refer to the First Step Act as a whole, not specific provisions. *See* H.R. Rep. No. 115-699, at 22 (2018). It is also unclear that granting courts the right to waive Section 3582(c)(1)(A)'s prerequisites effectively furthers these goals. "[T]he BOP is

---

[8] Congress could have easily altered the balance struck in Section 3582(c)(1)(A) in the recently enacted Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* Pub. L. No. 116-136, 134 Stat. 281 (2020). In that legislation, Congress expressly granted the BOP additional authority under a related provision, 18 U.S.C. § 3624(c)(2), to place an inmate in home confinement. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020).

frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *Russo*, 2020 WL 1862294, at *1.

The Court certainly recognizes the strong temptation to read an equitable exception into the statutory language under the cloud of these unprecedented circumstances. Given the amount of change that has occurred since the pandemic ballooned in the United States and the life and death nature of COVID-19 related requests, thirty days understandably seems like an eternity. Given that it will typically be a short time between a court's denial of a compassionate release motion on procedural grounds and the moment a defendant's claim will become procedurally ripe, it would be understandable to assume that circumstances would not change and that justice should not be delayed.

If this crisis has imported any universal lesson, however, it is that things can and do change rapidly. It appears prudent to allow the thirty-day backstop provided by Congress to function as intended. Doing so may allow for greater consistency for inmates faced with the possibility of infection. Courts cannot evaluate the BOP system as a whole via Section 3582(c)(1)(A) motions and instead must engage in ad-hoc review of individual defendant's circumstances on limited records.[9] This problem is exacerbated by the reality that Section 3582(c)(1)(A) motions are brought in the sentencing court. Accordingly, inmates at FCI Elton in Ohio are seeking relief

---

[9] Courts could provide greater nationwide consistency under Section 3582(c)(1)(A) if the Sentencing Commission updated the applicable policy statement. U.S. Sentencing Guidelines Manual § 1B1.13 (2018). Understandably, the policy statement does not provide guidance on how to evaluate Section 3582(c)(1)(A) requests in light of a pandemic. *Id.* Less understandably, the policy statement has not been updated to reflect the First Step Act's allowance for defendants to bring Section 3582(c)(1)(A) motions. *Id.* Because the policy statement only addresses motions brought by the BOP, it is unclear how the policy statement applies to motions brought by defendants. *See United States v. McCarthy*, No. 17-CR-230, 2020 WL 1698732, at *4 n.4 (D. Conn. Apr. 8, 2020) (discussing whether courts may engage in an "independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" (quoting *United States v. Rodriguez*, No. 03-CR-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020)).

under Section 3582(c)(1)(A) from courts across the country and their requests are undoubtedly meeting divergent results (even in courts within the Second Circuit).

The BOP is in the best position right now to consistently evaluate prisoners in its facilities to ensure that similarly situated prisoners are receiving consistent results, while simultaneously protecting the welfare of all prisoners (not just those suitable for sentence reduction pursuant to Section 3582(c)(1)(A)). *See Wright*, 2020 WL 1922371, at *2 ("The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The court may of course review those judgments."); *United States v. Skelos*, No. 15-CR-317, 2020 WL 1847558, at *4 (S.D.N.Y. Apr. 12, 2020) ("The current public health crisis demands a systemic response, rather than judge-by-judge determinations[] . . . ."). The thirty-day backstop will provide BOP time to effectuate such results. *See United States v. McCallister*, No. 13-CR-320, 2020 WL 1940741, at *3 (W.D. La. Apr. 21, 2020) (discussing steps the BOP is taking to combat the COVID-19 crisis); *United States v. Pinto-Thomaz*, No. 18-CR-579, 2020 WL 1845875, at *3 (S.D.N.Y. Apr. 13, 2020) (same).

Further, it appears the BOP has greater flexibility in determining how to respond to the crisis than the courts in ruling on Section 3582(c)(1)(A) motions. Typically, the BOP alone has authority to place inmates in alternative housing arrangements to reduce the spread of COVID-19 in BOP facilities. *See United States v. Venkataram*, No. 06-CR-102, 2016 WL 11448569, at *2 (S.D.N.Y. Dec. 12, 2016) ("The [BOP] has exclusive authority to designate the facility where prisoners will serve a sentence and to order a transfer from one facility to another." (internal quotation marks omitted)). The BOP also has discretion to grant furloughs to inmates. *Skelos*, 2020 WL 1847558, at *3; *see also United States v. Adcock*, No. 19-CR-106, 2020 WL 2043811, at *2

(W.D. La. Apr. 28, 2020) (discussing BOP's expanded authority under the CARES Act to grant home release). It appears as though the Court is limited to issuing a non-binding recommendation regarding alternative housing arrangements or taking the drastic step of reducing a defendant's sentence. *See United States v. Cox*, No. 18-CR-17, 2020 WL 1923220, at *4 (S.D. Ind. Apr. 21, 2020) (recommending defendant be admitted into Early Offender Home Detention Program in response to the risk posed by COVID-19); *United States v. Henderson*, No. 15-CR-487, 2019 WL 1460402, at *2 (S.D.N.Y. Mar. 18, 2019) (examining motion for judicial recommendation).

Habeas litigation in the district where each BOP facility is located also has a better chance of producing consistent and just results compared to ad-hoc Section 3582(c)(1)(A) motions. Defendant is currently classified as a member of an "at risk" subclass in an emergency habeas action proceeding in the Northern District of Ohio on behalf of inmates incarcerated at FCI Elkton. ECF No. 180; *see Wilson v. Williams*, No. 20-CV-794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). The Northern District of Ohio recently granted a preliminary injunction and ordered "evaluat[ion of] each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two (2) weeks." *Wilson*, 2020 WL 1940882, at *10. Accordingly, by the time Defendants' motion becomes procedurally ripe, action taken in compliance with the Northern District of Ohio's order may moot his request.

C.     *The Thirty-Day Backstop is Not a Traditional "Limitations Period" Subject to Equitable Exceptions*

Some courts claim Section 3582(c)(1)(A) "has features both of 'an administrative exhaustion requirement' and of 'a timeliness statute'" and have thus characterized the thirty-day backstop as a limitations period. *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *7 (W.D.N.Y. Apr. 22, 2020) (quoting *United States v. Scparta*, No. 18-CR-578, 2020 WL 1910481,

at *6 (S.D.N.Y. Apr. 20, 2020)). These courts cite *Holland v. Florida*, 560 U.S. 631 (2010), for the proposition that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in *favor* of equitable tolling." *Id.* at 645–46 (internal quotation marks omitted). The Supreme Court "will 'not construe a statute to displace courts' traditional equitable authority absent the 'clearest command.'" *Holland*, 560 U.S. at 646. This case, accordingly, presents two questions: (1) would a court traditionally have equitable authority to waive Section 3582(c)(1)(A)'s thirty-day backstop and, assuming an affirmative answer, (2) does Section 3582(c)(1)(A) contain a clear command that such authority is abrogated.

The Court doubts that this is the type of case in which a court would traditionally have equitable authority to waive the thirty-day backstop. *Holland* and the cases discussed therein involved more traditional limitation periods analogous to statutes of limitations. 560 U.S. at 647; *Young v. United States*, 535 U.S. 43, 49–50 (2002) (holding that three-year lookback period applicable to tax claims in bankruptcy is subject to equitable tolling); *United States v. Brockamp*, 519 U.S. 347, 348, 350–352 (1997) (holding that courts cannot equitably toll the statutory time for filing tax refund claims); *United States v. Beggerly*, 524 U.S. 38, 49 (1998) (examining statutory limitations period associated with land claims). Courts in this district examining Section 3582(c)(1)(A) have also cited similar timeliness claim-processing rules discussed by the Supreme Court such as the "time to file a notice of appeal." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16, 18 n.3 (2017) (noting that the Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions"); *e.g.*, *Russo*, 2020 WL 1862294, at *6; *see also Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 713 (2019) (examining "whether a court of appeals may forgive on equitable tolling grounds a failure to adhere to th[e] deadline [for

taking an immediate appeal from a federal district court's order granting or denying class certification]").

In *Holland*, the Supreme Court examined the timeliness provision in the federal habeas corpus statute—the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")—and found that it was subject to equitable tolling, in part, because "AEDPA's 1-year limit reads like an ordinary, run-of-the-mill statute of limitations." 560 U.S. at 634, 647. In *Young*, the Supreme Court explained that the three-year lookback period at issue was "a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced." 535 U.S. at 47 ("[T]he lookback period serves the same basic policies [furthered by] all limitations provisions." (second alteration in original) (internal quotation marks omitted)).

The Supreme Court reads equitable exceptions into such limitation periods because "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling'" and thus holds that there is a "rebuttable presumption" that Congress intended equitable tolling to apply to similar statutory requirements. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). The Supreme Court has declined to read such equitable exceptions into limitations periods that are distinct from statutes of limitations, such as those set by statutes of repose. *Cal. Pub. Emps.' Retirement Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052–53 (2017). In *Brockamp*, the Supreme Court specifically cautioned against "assum[ing] an implied exception for tolling virtually every time a number appears." 519 U.S. at 352. "To do so would work a kind of linguistic havoc." *Id.*[10]

_____

[10] In *Brockamp*, the Supreme Court considered the administrative burden that would be placed on the Internal Revenue Service if it was forced "to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification." 519 U.S. at 352. Although reading an equitable exception into the thirty-

The provision at issue here is not a run-of-the-mill statute of limitations. *See Scparta*, 2020 WL 1910481, at *6 ("[Section 3582(c)(1)(A)'s] exhaustion requirement [is] like no other of which the Court is aware."). Instead of prescribing "a period within which certain rights . . . may be enforced," *Young*, 535 U.S. at 47, Section 3582(c)(1)(A)'s thirty-day backstop provides an exception to the exhaustion requirement. *See United States v. Vence-Small*, No. 18-CR-31, 2020 WL 1921590, at *4 (D. Conn. Apr. 20, 2020) ("The 30-day [backstop] functions as an exception to a plenary exhaustion requirement, and the statute does not invite judges to craft additional exceptions."). As such, the thirty-day backstop functions more as an accelerant to judicial review than a statutory time cap on when such motions may be brought (like a statute of limitations), *see United States v. Haney*, No. 19-CR-541, 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020), and such rights may be enforced at any time upon motion of the BOP, 18 U.S.C. § 3582(c)(1)(A).

In *Beggerly*, the Supreme Court declined to read additional equitable limitations into the statute in question where it "effectively allowed for equitable tolling" by stating that the statute of limitations does "not begin to run until the plaintiff 'knew or should have known of the claim of the United States.'" 524 U.S. at 48. (quoting 28 U.S.C. § 2409a(g)). The Court further noted that additional equitable extensions were unwarranted given "the unusually generous nature of the [relevant] limitations time period." *Id.* at 48–49. The thirty-day backstop similarly functions as a limitation on the exhaustion requirement and is also unusually generous. *See Haney*, 2020 WL 1821988, at *4 ("[A]t the time the First Step Act passed, a 30-day period before which to seek

---

day backstop will not have precisely the same consequences, it has already resulted in courts weighing equities in a large number of cases across the country. This Court does not believe that Congress anticipated the flood of compassionate release litigation that would result from the COVID-19 pandemic. It seems unlikely that anyone could have predicted the deluge of sweeping changes that have occurred in the past several months in response to the virus, but one thing is clear: the interplay between the virus and the thirty-day backstop has created a logjam in the courts. It appears best to allow the thirty-day backstop to function as intended and to address the merits of these motions following the expiration of the thirty-day backstop.

judicial review would have seemed exceptionally quick."). Unlike limitations periods, which have regularly been subject to equitable principles, the thirty-day backstop is merely that, a backstop to the typically favored process of exhaustion of administrative remedies.[11] Congress could not have anticipated that courts would interpret its inclusion of the thirty-day backstop as a license to read out the backstop entirely in certain circumstances.

In short, the Court does not believe that it has equitable authority to waive Section 3582(c)(1)(A)'s novel, statutory exception to exhaustion. Even assuming it had such authority, however, Section 3582(c)(1)(A)'s language is unambiguous. The sole exception to the exhaustion requirement is the thirty-day backstop.

The Supreme Court analyzed courts' "traditional equitable discretion" to stay the effect of a statutory automatic stay contained in the PLRA in *Miller v. French*. 530 U.S. 327, 333–34, 336–37 (2000). The PLRA provides for the automatic stay of injunctions that do not comply with the PLRA's new (at the time of its passage) standards "for the entry and termination of prospective relief in civil actions." *Id.* at 333–34. The statute provides that a motion to modify or terminate prospective relief under the relevant section "shall operate as a stay during the period . . . beginning on the 30th day after such motion is filed." *Id.* at 334 (quoting 18 U.S.C. § 3626(e)(2)). The Supreme Court found that this language was mandatory and any interpretation reading in authority for courts to suspend "the automatic stay by applying the traditional standards for injunctive relief . . . would subvert the plain meaning of the statute, making its mandatory language merely

---

[11] The Supreme Court has recognized the strong policy interest favoring exhaustion in similar contexts. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976) (noting "the strong policy requiring exhaustion of state remedies when prisoners challenge the length of their confinement" (internal quotation marks omitted)). To support that proposition in *Brown*, the Supreme Court cited *Preiser v. Rodriguez*, which involved habeas relief, but Section 3582(c)(1)(A) bears similarities to habeas relief in that it provides an avenue to "speedier release from . . . confinement—the heart of habeas corpus." 411 U.S. 475, 498 (1973).

permissive." *Id.* at 337–38 ("[Such an interpretation] would mean that the motion to terminate merely *may* operate as a stay, despite the statute's command that it 'shall' have such effect.").

Similarly here, Section 3582(c)(1)(A)'s language is mandatory; a defendant may only bring a motion to modify a term of imprisonment "after [her or she] has fully exhausted all administrative rights to appeal . . . or the lapse of 30 days from the [warden's] receipt of such a request . . . , whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Court does not have discretion to read a further exception into this plain language. Although a number of courts have reached the opposite conclusion, this Court's decision is consistent with a significant number of courts that have considered this issue. *See United States v. Schultz*, No. 17-CR-193, 2020 WL 1872352, at *4 (W.D.N.Y. Apr. 15, 2020) (collecting cases); *United States v. Epstein*, No. 14-CR-287, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (noting that, within a week, "a majority of district courts across the country have" found Section 3582(c)(1)(A)'s prerequisites to be mandatory) (collecting cases); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that defendant's failure to satisfy Section 3582(c)(1)(A)'s prerequisites "present[ed] a glaring roadblock foreclosing compassionate release").

## II.   **Guidance for Renewed Motion**

Although Defendant's motion is procedurally defective and must be denied on those grounds, the Defendant will be free to renew his motion once he has satisfied either the exhaustion requirement or the thirty-day backstop.[12] The Court accordingly reserves the question of whether Defendant has satisfied the substantive requirements of Section 3582(c)(1)(A). *See United States v. Hart*, No. 17-CR-248, 2020 WL 1989299, at *5 (S.D.N.Y. Apr. 27, 2020) ("In light of my

---

[12] The Court encourages the parties to mutually agree on the date upon which Defendant may renew his motion, which will likely depend on the date the warden of Defendant's facility received Defendant's request pursuant to Section 3582(c)(1)(A).

decision that Defendant has not exhausted his administrative remedies, I need not reach the issue of whether he has demonstrated extraordinary and compelling circumstances.").

In the event Defendant renews his motion, he should specifically explain: how reduction of his term of incarceration would be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A); how release would allow him to better protect himself from COVID-19 infection; the basis for the Court's authority to modify his sentence so "that the remaining portion [may] be served on home confinement," ECF No. 179 at 7; and provide any relevant updates on the pending habeas action regarding the conditions of confinement at FCI Elkton pending in the Northern District of Ohio (*Wilson v. Williams*, No. 20-CV-794). If the Court determines that a briefing schedule is necessary, the Government should address specific steps taken at FCI Elkton to reduce the spread of COVID-19, provide the number of inmates and staff at FCI Elkton that have been infected with COVID-19, and provide the number of tests that have been completed at FCI Elkton with respect to inmates and staff.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Release from Custody, ECF No. 176, is DENIED without prejudice.

IT IS SO ORDERED.

Dated: May 5, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court